**Derrick CAREY, Petitioner–Appellant,**

v.

**Kevin MYERS, Warden Respondent–Appellee.**

No. 02–5275.

United States Court of Appeals, Sixth Circuit.

July 24, 2003.

Before KEITH, MOORE, and GIBBONS, Circuit Judges.

OPINION

GIBBONS, Circuit Judge.

Petitioner-appellant Derrick Carey pled guilty to felony murder and especially aggravated robbery in a Tennessee state court. Carey was sentenced to life imprisonment on the felony murder charge and to a consecutive sentence of twenty years imprisonment on the especially aggravated robbery charge. After exhausting his remedies with the Tennessee courts, Carey filed a petition for federal habeas corpus relief, alleging that he received ineffective assistance of counsel and that his guilty plea was involuntary. The district court reviewed all of Carey's claims and issued a detailed opinion denying Carey's petition. The district court subsequently granted Carey a certificate of appealability. For the reasons set forth below, we affirm the district court's judgment denying Carey's petition for federal habeas corpus relief.

## I.

On September 16, 1993. Carey pled guilty in Tennessee state court to one count of felony murder and one count of especially aggravated robbery. The events leading to Carey's conviction were set forth by the Tennessee Court of Criminal Appeals as follows:

> The petitioner entered the restaurant carrying a sawed-off shotgun and demanding that employees open the safe. When one employee said the safe could not be opened, the petitioner shot him in the chest. The petitioner and three other men then took an undetermined amount of money from the restaurant and fled. The victim was pronounced dead upon his arrival at the hospital. The petitioner attempted to escape by fleeing the scene in a stolen vehicle. When he was apprehended a short time later, he was still in possession of the murder weapon and an amount of cash. The petitioner later gave police a complete statement as to his involvement. The three other men involved also were apprehended. Two of these men gave statements to the police and in their statements, they named petitioner as the trigger man.

*Carey v. State*, No. 01C01–9612–CR–00528, 1997 WL 766463. at *1 (Tenn.Crim.App. Dec. 12, 1997). At the hearing on his petition to enter a plea, Carey stated that he was satisfied with the performance of his trial counsel, Tommy Overton, that he was aware of the consequences of pleading guilty, that he understood the nature of the proceedings, and that he had signed the plea petition freely and voluntarily. Carey was sentenced to life imprisonment on the charge of felony murder and to a consecutive sentence of twenty years imprisonment on the count of especially aggravated robbery.

On July 18, 1994, Carey filed a *pro se* petition for state post-conviction relief in the state trial court. In his petition, Carey alleged that his plea was not entered freely and voluntarily and that he was denied the effective assistance of counsel. On March 20, 1996, the post-conviction court held an evidentiary hearing in which both Overton and Carey testified. On July 19, 1996, the post-conviction court denied the petition. On December 12, 1997, the Tennessee Court of Criminal Appeals affirmed the judgment of the trial court. Carey's request for permission to appeal to the Tennessee Supreme Court was denied on March 15, 1999.

On March 22, 2000, Carey filed a *pro se* petition for federal habeas corpus relief in the United States District Court for the Middle District of Tennessee. After counsel was appointed. Carey filed an amended petition on April 18, 2001. On January 17, 2002, the district court entered an order granting summary judgment to respondent-appellee Kevin Myers, denying Carey's motion for summary judgment, denying Carey's petition, and dismissing the case. The district court granted a certificate of appealability as to specified issues on February 26, 2002.

## II.

A district court's legal decisions in habeas corpus actions are reviewed *de novo*. *See Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir.2000). Because Carey's habeas petition was filed on March 22, 2000, after the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective, the provisions of the AEDPA apply to this case. Pursuant to the AEDPA, 28 U.S.C. § 2254(d), federal courts must utilize the following standards when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). In addition. federal courts must presume that factual findings made by a state court are correct, unless the petitioner can show otherwise by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith,* 161 F.3d 358. 360–61 (6th Cir.1998). The presumption "applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy,* 99 F.3d 1302, 1310 (6th Cir.1996). The appeals court gives complete deference to state court's findings of fact supported by the evidence. *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir.1994); *see also Sumner v. Mata,* 449 U.S. 539, 546, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (holding that § 2254 makes no distinction between the factual determinations of a state trial court and those of the appellate court).

The Supreme Court discussed the requirements for habeas relief under § 2254(d)(1) in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). According to *Williams,* the "contrary to" provision of the AEDPA allows a federal court to grant the writ only "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Id.* at 405, 120 S.Ct. 1495. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 408–09, 120 S.Ct. 1495. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410, 120 S.Ct. 1495. Consequently, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495.

### III.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show two elements: deficient performance and prejudice. *See Bell v. Cone,* 535 U.S. 685, 695, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In judging performance, this court must "assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." *Kimmelman v. Morrison,* 477 U.S. 365, 386, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). As to the prejudice element, in the guilty plea context a peti-

tioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

■ Carey first contends that Overton was "completely incorrect in his statements to Mr. Carey that he would be released in nineteen to twenty-three years and he does not dispute his mistake." This contention is only partially correct factually. At the state evidentiary hearing, Overton testified, "I told him that I thought there was a *possibility* that he would be eligible for parole after serving somewhere between nineteen and twenty-three years." (emphasis added). The district court confirmed that "counsel underestimated the amount of time that petitioner *probably* would have to serve before going before the parole board." (emphasis added). According to the district court's calculations. Carey would likely have had to serve a minimum of 29.4 years before he became eligible for parole.

Carey then argues that "the Tennessee Court of Criminal Appeals refused to acknowledge that counsel's advice was erroneous, even though counsel admitted his advice was wrong at the post-conviction hearing." Quoting *Walton v. State,* 966 S.W.2d 54, 55 (Tenn.Crim.App.1997). Carey notes that less than a year before deciding his appeal, the Court of Criminal Appeals held, in a case involving one of his co-defendants and the same trial court judge, that "erroneous advice regarding parole that induces a defendant to forego his or her right to a jury trial can be used to establish a claim for ineffective assistance." On this basis, Carey contends that the Court of Criminal Appeals' denial of

relief in his case is both contrary to and an unreasonable application of *Strickland* and *Hill.*

In its opinion, the Court of Criminal Appeals acknowledged that Overton "told the petitioner that he would likely have to serve between nineteen and twenty-three years before even becoming eligible for parole." *Carey,* 1997 WL 766463 at *2. However, the Court of Criminal Appeals placed this statement in context and found that Overton "never guaranteed the petitioner he would be released by a certain date. He only told the petitioner when it might be possible for him to go before the parole board." *Id.* at *3. Applying *Strickland* and *Hill,* the Court of Criminal Appeals concluded that there was "no merit to the petitioner's conclusion that his trial counsel was ineffective." *Id.*

As previously explained, this court must presume that the factual findings of the Court of Criminal Appeals are correct, unless Carey presents clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). Carey has failed to make such a showing here. At the state evidentiary hearing, Overton testified that he "made it very clear, as I do I think to all my clients, about the possibilities. It's not definite." Overton stated that in response to Carey's inquiries, he told him. "I can't give you an exact date. All I can do is tell you when you're eligible. But that the sole decision of when and if you get out of jail will be up to the parole board, and I can't give you a date." With specific regard to his erroneous statement, Overton said that he told Carey that he "had heard rumors, but this was no guarantee." The record of the evidentiary hearing also reflects the following exchange:

Q. And Mr. Overton, have you ever advised a criminal defendant as to the precise date in which they will

meet with the board and become eligible for parole?

A. I absolutely have never done that, because nobody knows that. And anybody that would tell anybody precise dates when somebody was going to be up before the parole board would not be telling the truth. Just nobody knows. I give people likelihoods, and I make sure they understand that's the possibility and that doesn't mean when they're walking out of jail. That means you've got a possibility of going before the parole board on a certain number of years.

As the foregoing remarks illustrate, Overton repeatedly emphasized that his estimate concerning parole eligibility was not a guarantee, but rather was indefinite and uncertain. In light of the Court of Criminal Appeals' findings of facts, as well as an independent review of the record, the conclusion that Overton's qualified estimate did not constitute ineffective assistance of counsel was not an unreasonable application of federal law.

Moreover, in deciding whether Overton's qualified estimate constituted ineffective assistance of counsel, the Court of Criminal Appeals properly weighed his erroneous statement against his overall performance. The Court of Criminal Appeals noted that at the evidentiary hearing Overton testified that "he had carefully studied the evidence and had determined that the petitioner would be in danger of being sentenced to death." and that "he had kept petitioner informed of the overwhelming evidence against him." The Court of Criminal Appeals added that Overton "secured a favorable plea agreement." As previously stated, this court must defer to the state court's findings of facts in the absence of clear and convincing evidence indicating otherwise.

The record supports the Court of Criminal Appeals' conclusions. At the evidentiary hearing, Overton testified that the evidence against Carey included a "bone chilling" recording of "the victim begging for his life" as well as statements by both Carey and his co-defendants implicating him, and agreed that "it would be almost a foregone conclusion that under the facts of this case that a properly qualified jury would have rendered the death penalty." Overton added that he "felt real good about the offer that I'd got Mr. Carey, based on what happened to the lookout man in his trial, receiving the same thing that Mr. Carey got, when, in fact, he [Carey] was the triggerman." In the context of the entire record, the Court of Criminal Appeals' determination that Overton's qualified estimate was insufficient to overcome the presumption of reasonable professional assistance does not represent an unreasonable application of federal law.

Carey argues that Overton's misstatement alone "is sufficient to show ineffective assistance of counsel." In support of this contention, Carey relies on *Magana v. Hofbauer*, 263 F.3d 542 (6th Cir.2001), where this court found that counsel's "gross misadvice to his client regarding the client's potential prison sentence certainly fell below an objective standard of reasonableness under prevailing professional norms." *Id.* at 550. Unlike the instant case, however, the counsel in *Magana* did not phrase his advice in tentative terms, but instead made unequivocal statements to the petitioner. *Id.* at 549. *Magana* thus has no application to the situation presented here.

## IV.

The Supreme Court has held that a defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady v. United*

*States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. 748 (1970); *accord Hart v. Marion Corr. Inst.,* 927 F.2d 256, 257 (6th Cir.1991). A guilty plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Such a showing generally is made by the government's production of a transcript of state court proceedings to establish that the plea was made voluntarily. *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir.1993). "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel' was not 'within the range of competence demanded of attorneys in criminal cases.'" *Hill,* 474 U.S. at 56–57, 106 S.Ct. 366 (quoting *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

■ Carey argues that "he was misled and coerced by counsel" and that the Court of Criminal Appeals' conclusion that his "plea was entered freely and voluntarily was contrary to and an unreasonable application of the clearly established law of *Boykin* and *Hill.*"[1] Carey's claims have no basis. In its opinion, the Court of Criminal Appeals reviewed the transcript of the plea hearing and noted that Carey "stated that he understood the proceeding and that he had been satisfied with Mr. Over-

ton's representation." *Carey,* 1997 WL 766463 at *2. The Court of Criminal Appeals also observed that Carey "was given the opportunity at the entry of the plea to ask any questions or to voice his displeasure with his attorney" but that Carey "took neither opportunity." *Id.* at *3. The transcript of the plea hearing supports the conclusion reached by the Court of Criminal Appeals. Carey was asked whether he was "satisfied with Mr. Overton's representation," and he answered in the affirmative. Although at the evidentiary hearing Carey argued that Overton "was using a scare tactic" and was "intimidating me," the Court of Criminal Appeals' "failure to grant relief was tantamount to an express finding against the credibility of the defendant." *Marshall v. Lonberger,* 459 U.S. 422, 433, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). Twenty-eight U.S.C. § 2254(d) does not allow this court to redetermine Carey's credibility. *Id.* Considering all of these facts, the Court of Criminal Appeals' decision to deny Carey's claim that his plea was not voluntarily entered was not an unreasonable application of federal law.

### V.

For the foregoing reasons, we affirm the judgment of the district court.

---

1. Carey also claims that he "was clearly confused at the hearing" and that he "expressed to the Court a need for help, his inability to fully read or comprehend the petition, and his difficulty in understanding what was going on." However, these claims were not included in Carey's petition for state post-conviction relief or in his brief to the Court of Criminal Appeals. "The federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *McMeans v. Brigano* 228 F.3d 674, 681 (6th Cir.2000) (citing *Franklin v. Rose,* 811 F.2d 322, 324–25 (6th Cir.1987)). "A claim may only be considered 'fairly presented' if the petitioner asserted both the factual and legal basis for his claim to the state courts." *Id.* (citing *Franklin* at 325). Consequently, petitioner's claims regarding his alleged confusion and lack of comprehension at the hearing are not properly before this court.