*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0006p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JOY LOVELL,

               *Petitioner-Appellee,*

      *v.*

SHERRI DUFFEY,

               *Respondent-Appellant.*

No. 08-3142

>

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 07-00732—Sandra S. Beckwith, District Judge.

Argued: June 10, 2010

Decided and Filed: January 6, 2011

Before: GILMAN and WHITE, Circuit Judges; THAPAR, District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Christopher J. Pagan, REPPER, PAGAN, COOK, LTD., Middletown, Ohio, for Appellee. **ON BRIEF:** M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Christopher J. Pagan, REPPER, PAGAN, COOK, LTD., Middletown, Ohio, for Appellee.

    GILMAN, J., delivered the opinion of the court, in which THAPAR, D. J., joined. WHITE, J. (pp. 19–23), delivered a separate dissenting opinion.

———————————

[*] The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge.  Sherri Duffey, Warden of the Ohio Reformatory for Women in Marysville, Ohio, appeals the district court's issuance of a conditional writ of habeas corpus to Joy Lovell.  The writ was granted on the ground that Lovell's attorney was ineffective in failing to advise her of the potential adverse consequences of rejecting the state prosecutor's plea offer.  According to the district court, Lovell should be resentenced by the state trial court under the terms of the rejected offer.  For the reasons set forth below, we **REVERSE** the judgment of the district court and reinstate Lovell's conviction and sentence.

## I.  BACKGROUND

The parties do not dispute the district court's statement of the relevant facts and procedural background.  They are as follows:

### A.     Factual and procedural background

In April 2003, Lovell was charged by the state of Ohio with aggravated drug trafficking and the offense of permitting drug abuse, felony offenses that carried a mandatory prison term of one to five years.  The State made a plea offer to Lovell before her trial that allowed her "to plead guilty to a reduced charge, which did not carry a mandatory prison term and thus rendered her eligible to receive probation."  Lovell rejected this plea offer and chose instead to proceed to trial.  She was found guilty of the drug-related offenses and was sentenced "to the minimum mandatory prison sentence of one (1) year for the trafficking offense and a concurrent six (6) month term of imprisonment for the permitting drug abuse offense."

After Lovell obtained new counsel, she timely filed a notice of appeal with the Ohio Court of Appeals, which stayed her sentence pending appeal.  The Ohio Court of Appeals then granted Lovell's motion to transfer jurisdiction to the trial court, where she

filed a motion for a new trial in September 2003 pursuant to Rule 33(A) of the Ohio Rules of Criminal Procedure.  Her motion was based on a claim that her trial counsel provided ineffective assistance when he "did not properly convey to [her] all the implications and ramifications of the plea bargain offer."

Lovell's ineffective-assistance-of-counsel claim focused on the allegation that her trial counsel did not inform Lovell that the reduced charges in the State's plea-bargain offer "would render her offenses probationable, whereas a conviction as charged would require mandatory prison time."  Lovell claimed that if she had known that the charges against her carried mandatory prison time, she would have accepted the State's proposed plea offer.  She attested in a supporting affidavit as follows:  "At no time during the discussion did my attorney explain to me that if I was convicted as charged, prison time would be mandatory, and that if I pleaded guilty pursuant to the plea agreement, I would be eligible for probation.  At that time, I turned down the plea bargain."  Lovell also stated that, a few days prior to her sentencing hearing, her trial counsel told her that "it was quite possible that the court would give me probation in my case."

After holding a hearing on Lovell's motion for a new trial, the trial court denied the motion, concluding that "[t]he fact that her attorney did not advise her of the potential ramifications of a guilty verdict is not a basis for a new trial under [Ohio] Criminal Rule 33(A)."  In August 2004, the Ohio Court of Appeals affirmed, on an accelerated appeal, the trial court's judgment that the "appellant did not receive the ineffective assistance of counsel."  It explained that "the state reportedly made an offer to appellant that would allow her  to plea to charges wherein a prison term would not be mandatory.  The plea was rejected by appellant . . . ."  It also noted that she "filed a motion for a new trial and introduced her testimony about conversations between [herself] and her counsel."  After the court of appeals rejected Lovell's claim, the Ohio Supreme Court dismissed the appeal in December 2004 because it did not involve "any substantial constitutional question."

While her appeal of the trial court's ruling on her motion for a new trial was pending in the Ohio Court of Appeals, Lovell obtained the assistance of still another attorney. The new counsel filed a petition for postconviction relief in June 2004, based on the same ineffective-assistance-of-counsel claim that was raised in her motion for a new trial. In May 2006, the trial court granted the State's motion to dismiss this new petition because the ineffective-assistance-of-counsel claim had already been decided by the Ohio Court of Appeals on direct appeal. Lovell then appealed in a consolidated appeal to the Ohio Court of Appeals both the trial court's dismissal of her petition for postconviction relief and the trial court's June 2006 denial of a motion to vacate her sentence. She argued that her petition for postconviction relief was not barred by res judicata because the Ohio Court of Appeals had failed to articulate its rationale for affirming the trial court on direct appeal.

In August 2007, the Ohio Court of Appeals again affirmed the trial court's dismissal of Lovell's petition for postconviction relief because it was "apparent from the facts recited in this court's accelerated calendar judgment entry that we found that appellant's attorney communicated the details of the plea offer to appellant and that she rejected that offer." The Ohio Court of Appeals further held that although "appellant argues that her claim of ineffective assistance of counsel, made under her Crim. R. 33 motion for a new trial[,] is considered different from the same claim made in her petition for postconviction relief, it is clear that the issue was raised and rejected by this court in appellant's consolidated appeal. Therefore, the issue is barred by res judicata and the trial court properly denied appellant's petition for postconviction relief on that basis."

Lovell did not appeal the August 2007 decision of the Ohio Court of Appeals to the Ohio Supreme Court. She instead filed a petition for a writ of habeas corpus in the district court in September 2007 and began serving her sentence in November 2007. The court held an evidentiary hearing the following month on Lovell's ineffective-assistance-of-counsel claim. On December 21, 2007, it conditionally granted the writ, ordered that Lovell be immediately released from prison, and determined that she should be resentenced pursuant to the State's proposed plea offer that she had

originally declined.  The court released Lovell on her own recognizance bond pending the present appeal.

**B.      Lovell's ineffective-assistance-of-counsel claim**

   *1.      Lovell's September 2003 sentencing hearing and her October 2003 hearing on her motion for a new trial*

The issue of whether Lovell knew that the charges against her carried mandatory prison time first appeared on the state trial-court record at her sentencing hearing in September 2003.  Lovell was asked by the court whether she understood that prison time is mandatory in this case.  She responded in the negative.  When the court inquired again as to whether she understood the mandatory nature of her sentence, Richard Hurchanik, her trial counsel, responded that he thought she did understand.  But Hurchanik also noted that her husband had informed Hurchanik that she has some mental problems.  Lovell then added that she has "also had car accidents."  Later in the sentencing, the court again brought up whether Lovell knew about the mandatory prison time associated with the charges against her.  The following exchange occurred:

> THE COURT:  Did she not know this was mandatory time?
>
> THE DEFENDANT:  No, I did not know it.
>
> Mr. HURCHANIK:  It was discussed once upon a time, but that was before trial, Your Honor.
>
> THE DEFENDANT:  I didn't know about that.

Still later, the court asked:  "In the mean time—you didn't know it was a mandatory sentence?"  Lovell responded:  "I didn't know. . . ."

As further support for her claimed ignorance of the mandatory prison sentence, Lovell submitted to the district court an affidavit from Judge Matthew Crehan, the state sentencing judge, attesting to the fact that at her sentencing hearing "Lovell expressed complete surprise about the mandatory prison requirement" and that her "demeanor was consistent with someone who was shocked and surprised."  Judge Crehan further explained in his affidavit that he thought, given Lovell's demeanor, that she "was

unaware that she was indicted on a charge that required a mandatory prison sentence and that the plea bargain would have eliminated the mandatory prison sentence."

If Lovell had accepted the State's plea offer, Judge Crehan averred that he would have likely sentenced her to probation. But he denied her motion for a new trial in 2003 because he reasoned that her lack of knowledge concerning the mandatory sentence "did not render [her] trial unfair or deficient." Judge Crehan's affidavit was prepared in October 2007, over four years after Lovell's sentencing hearing and also after all of her proceedings in the state courts had concluded. The district court noted that the state courts were thus "not privy to the information contained in the affidavit when assessing the merits of petitioner's ineffective assistance of counsel claim."

At the October 2003 hearing that the state trial court held on Lovell's motion for a new trial, she testified that her trial counsel never told her that the charges against her carried mandatory prison time. She explained that, under the proposed plea offer, she would have had to forfeit her car in order to receive probation under the reduced charges. Because she did not want to relinquish her car, she rejected the plea offer. But she claimed that her attorney never looked up the sentence associated with the charges against her because he thought that she would receive probation even if the plea offer was not accepted. Lovell claimed that her attorney repeated this information to her after she was convicted at trial, but before her sentencing. Even though she continued to maintain her innocence, Lovell stated that she would have accepted the State's plea offer if she had known she would have to go to prison if convicted of the charges that were brought against her.

### 2. *The district court's evidentiary hearing*

The district court held an evidentiary hearing in December 2007 to further investigate the facts surrounding Lovell's rejection of the State's plea offer. In addition to the evidence presented at the October 2003 state-court evidentiary hearing, Lovell's husband testified that Hurchanik told him and Lovell immediately before her sentencing that she would probably receive probation. (Lovell's husband testified after being present in the courtroom for Lovell's testimony because the parties agreed that there was

no need to separate the witnesses.) Her husband said that Lovell thought she would receive probation because Hurchanik had never mentioned a mandatory prison sentence if she were convicted as charged. He also claimed that Hurchanik expressed surprise at the sentence that was imposed.

To counter Lovell's evidence, the State introduced a key document for the first time at the federal evidentiary hearing. Lovell had previously filed and voluntarily dismissed a civil malpractice claim against Hurchanik. In an affidavit that was a part of the malpractice action, Hurchanik had averred as follows:

> Before Plaintiff's criminal trial . . . I informed Plaintiff of a plea bargain offered to her by the State of Ohio. This plea bargain required Plaintiff to enter a guilty plea in exchange for a reduction of charges, which would have made Plaintiff eligible for probation. I also informed Plaintiff, in writing, that if she were convicted of the charges set out in the indictment against her, including a felony 3 offense, she would serve a minimum of 1 year, and a maximum of 5 years, mandatory jail time.

> Before Plaintiff's criminal trial, Plaintiff signed a written memoranda informing her of the mandatory jail time associated with the criminal conviction at trial, and also wrote "I am innosent." I kept this memoranda with my records concerning Plaintiff's criminal case. The signed memoranda which Plaintiff signed is attached as "Exhibit A."

The district court explained that "Exhibit A" is

> a copy of handwritten notations, which were made on what appears to be the cover or back of a tabbed folder for "Joy Lovell 323." These notations include a time given of "12:45 pm," which is encircled; the statement "F3 = *1* to *5* yr. max - *mandatory* time (per Jeff);" and contained within another circle, the statement, "*Min.* Jail time 1 yr.," under which is written "I am innosent," followed by the statement "xx *I am innocent*" and to the side of that, the signature of "Joy Lovell."

Upon being shown this exhibit, Lovell explained to the district court that

> she had written the two "I am innocent" statements, one of which was misspelled, and had signed her name by them. She said that Mr. Hurchanik had given her the white piece of paper to sign in the courtroom just before her trial commenced, and that "nothing else" was written on the paper when she signed it.

Hurchanik was the last witness to testify at the federal evidentiary hearing. The district court then went into great detail describing Hurchanik's narrative of his communication with Lovell about the sentence that she would receive, as follows:

> Hurchanik recalled that the terms of the plea offer included the forfeiture of the petitioner's car and a reduction in the charge from a felony "three" to a felony "four" offense. He said he conveyed the offer to petitioner, who reacted by saying she was not guilty and expressed "a fixation on not having [her] vehicle forfeited."

> In addition, [he] recalled that the prosecutor, Jeff Giuliano, had pointed out to him that the charged offense carried a mandatory sentence, which he relayed to petitioner at that time. He said that because one of his prior clients had accused him of not relaying a plea offer, it is his customary practice to always have a written record of the plea offer which he records on the back page of the client's manilla folder. In this case, he said that he wrote the misspelled "I am innosent" statement on the back of the folder and provided a signature line under it. Petitioner misunderstood what she was to do, and wrote "I am innocent" a second time in the signature line provided by him and then signed her name by that. He said all the handwritten notations, including the statements about the mandatory sentence "per Jeff" Giuliano, were on the folder when he presented it to petitioner. [He] further stated that he never would have presented a blank piece of paper to petitioner to sign, as she has claimed.

Hurchanik also disputed the testimony of Lovell's husband to the effect that Hurchanik had told them just before Lovell's sentencing that she would likely receive probation. He did not remember discussing Lovell's sentence in the presence of her husband at all, and further testified that "he would not have told petitioner she would probably get probation when a mandatory sentence was involved." Hurchanik also said that he did not present the manilla folder containing information about the plea offer when Lovell was being questioned at her sentencing hearing because "it did not occur to him to bring the matter to the court's attention at that time." Nor did he produce the folder at any of her subsequent criminal proceedings because he stopped representing her after she was sentenced and was not involved in her later attempts to overturn her sentence. The folder was produced for the first time when Hurchanik's attorney in the civil malpractice suit asked him for a copy of his entire client file.

**C.       The district court's opinion**

In its review of the Ohio Court of Appeals' August 2004 opinion affirming Lovell's conviction, the district court observed that this was the only state-court decision "to consider and reject petitioner's ineffective assistance of counsel claim on the merits." And that decision provided little analysis supporting its conclusion, although the district court observed that, in later rejecting Lovell's appeal from the denial of her motion for post-conviction relief, the Ohio Court of Appeals "explained that its determination was based on factual findings, 'apparent from the facts recited' in the direct appeal judgment entry, that petitioner's trial counsel had 'communicated the details of the plea offer' to petitioner and 'she rejected that offer.'" The district court further found that the evidence of Hurchanik's manilla folder containing notes regarding the sentencing details "suggests, as the state appellate court found, that when presenting the State's plea offer to petitioner, Hurchanik relayed information about the mandatory sentence for the charged 'F-3' offense, as set forth in the notations on the back of the client folder."

Applying the ineffective-assistance-of-counsel standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the district court concluded that Hurchanik's conduct was deficient because he failed to ensure that Lovell was aware that she would have to serve mandatory prison time if she were convicted of the charges against her. The court reached this conclusion by crediting the statements that Lovell had consistently made since her sentencing hearing that she was unaware of the mandatory jail time, and by crediting Judge Crehan's affidavit stating his belief that Lovell was not aware of the mandatory minimum sentence.

Lovell attempted to minimize the importance of the plea information contained on the manilla folder that she signed by alleging that she wrote "I am innocent" on and signed a blank sheet of white paper in the courtroom just before her trial commenced (as opposed to earlier on, when she was still considering whether to accept the plea offer). The district court rejected this contention, however, because there "simply [was] insufficient evidence in the record to support the serious charge that Hurchanik engaged in the intentional fabrication of evidence at that time." But the court discounted the

folder's importance because the words were written in "cryptic, legal short-hand notes" that "[a] lay person would have had difficulty understanding," and because "there is evidence in the record suggesting that [Lovell] may have had mental health problems, which would have required even more diligence on counsel's part to ensure she was made fully aware of and understood the risks and benefits involved in deciding whether or not to accept the State's plea offer."

Ultimately, the district court held that the Ohio Court of Appeals' determination "that petitioner did not receive ineffective assistance solely because counsel had conveyed the details of the plea offer to her, constituted an unreasonable application of the *Strickland/Hill* standard." This was so, the court said, because the effective assistance of counsel to which a criminal defendant is entitled in deciding whether to accept or reject a plea offer requires more than "merely relay[ing] information to her about the mandatory prison sentence she was facing for the charged offense"; it also includes ensuring that she "understood this information in order to properly assess the risks involved in proceeding to trial versus pleading guilty to a reduced charge that would render her eligible for probation."

The district court further concluded that Hurchanik's deficient conduct resulted in prejudice because Lovell would have accepted the plea offer and received probation had she been fully informed. In support of this conclusion, the court cited Lovell's own contentions that she would have accepted the plea offer, Judge Crehan's affidavit stating he would have likely sentenced her to probation if she had so accepted, and Hurchanik's testimony that Judge Crehan would have likely sentenced Lovell to probation based on the judge's reputation as a lenient sentencer. The court further noted that, despite Lovell's claim of innocence and desire to keep her car, the disparity between the likelihood of probation she would receive on accepting the plea offer, versus the one-to-five-year sentence she would receive if she were to be found guilty, supported the conclusion that Lovell would have accepted the plea offer. To remedy the purported violation of Lovell's constitutional right to the effective assistance of counsel, the court

determined that Lovell should be resentenced pursuant to the plea offer. The Warden's timely appeal followed.

## II.  ANALYSIS

### A.       Standard of review

A district court's legal conclusions in a habeas case are reviewed de novo; its factual findings are reviewed under the clear-error standard. *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008). Moreover, the state court's decision under review is entitled to deference pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which is codified at 28 U.S.C. § 2254. Section 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Not every constitutional error in a state-court proceeding merits the issuance of the writ under AEDPA. But those that "undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ." *Williams v. Taylor*, 529 U.S. 362, 375 (2000). The bedrock case guaranteeing the right to counsel in criminal proceedings is *Strickland v. Washington*, 466 U.S. 668 (1984), which held that the Sixth Amendment's right to the assistance of counsel plays a critical role in "the ability of the adversarial system to produce just results" and "plays the role necessary to ensure that the trial is fair." *Id.* at 685. This right is not simply to the presence of a licensed lawyer, but to the "effective assistance" of that lawyer. *Id.* at 684-85. Further, this right was clearly established by the Supreme Court's opinion in

*Strickland* when Lovell's state-court conviction became final. *See Williams*, 529 U.S. at 390-91 (holding that the fact that "the *Strickland* test of necessity requires a case-by-case examination of the evidence, obviates neither the clarity of the rule nor the extent to which the rule must be seen as established by this Court") (citations and internal quotation marks omitted).

The Supreme Court has cautioned that "habeas corpus is not to be used as a second criminal trial, and federal courts are not to run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals." *Id.* at 383. "[A] federal habeas court may not issue a writ under the unreasonable application clause simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly." *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "Rather, the issue is whether the state court's application of clearly established federal law is 'objectively unreasonable.'" *Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001) (quoting *Williams*, 529 U.S. at 410); *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000) ("Although the [Supreme] Court failed to specifically define 'objectively reasonable,' it observed that 'an unreasonable application of federal law is different than an incorrect application of federal law.' Thus, even if we believe that a state court incorrectly applied federal law, we must refuse to issue the writ of habeas corpus if we find that the state court's decision was a reasonable one." (quoting *Williams*, 529 U.S. at 410)).

Because the Ohio Court of Appeals issued a summary opinion that did not extensively discuss its reasoning, we defer only "to the result reached[,] not the reasoning used" by the state court. *Hawkins v. Coyle*, 547 F.3d 540, 546-47 (6th Cir. 2008); *see also Harris v. Stovall*, 212 F.3d 940, 943 n.1 (6th Cir. 2000) (holding that where "a state court decides a constitutional issue by form order or without extended discussion, a habeas court should then focus on the result of the state court's decision"). We also conduct a "careful and independent review of the record and applicable law." *Hawkins*, 547 F.3d at 546 (internal quotation marks omitted). This independent review,

however, "is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Harris*, 212 F.3d at 943; *see also Phillips v. Bradshaw*, 607 F.3d 199, 209 (6th Cir. 2010) (holding that even after conducting a "careful review of the record and applicable law," the federal court is barred "from reversing unless the state court's decision is contrary to or an unreasonable application of federal law") (internal quotation marks omitted).

**B.        The merits of Lovell's Sixth Amendment claim**

There are two components to the analysis of whether a criminal defendant's right to the effective assistance of counsel under the Sixth Amendment has been violated:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Williams*, 529 U.S. at 390 (quoting *Strickland*, 466 U.S. at 687).

In 2007, the Ohio Court of Appeals determined that its 2004 accelerated judgment rejecting Lovell's ineffective-assistance-of-counsel claim was correct because the facts recited in its earlier opinion demonstrated that Lovell's trial counsel had "communicated the details of the plea offer to appellant and that she rejected that offer." But the district court concluded that although the Ohio Court of Appeals correctly cited the Supreme Court's controlling decision in *Strickland* on ineffective-assistance-of-counsel claims, the state court's two rulings, taken together, constituted an unreasonable application of the *Strickland* standard.

The district court reasoned that Hurchanik "merely relayed information to her about the mandatory prison sentence she was facing for the charged offense, without ensuring that she also understood this information in order to properly assess the risks involved in proceeding to trial versus pleading guilty to a reduced charge that would

render her eligible for probation." His conduct was "deficient" under the first prong of the *Strickland* standard, according to the district court, because he "failed to 'communicate fully' to petitioner, or to assess her understanding of, 'the significance of the [S]tate's . . . plea offer, or the consequences of rejecting it."

On the other hand, the district court acknowledged that the "evidence suggests, as the state appellate court found, that when presenting the State's plea offer to petitioner, Hurchanik relayed information about the mandatory sentence for the charged 'F-3' offense as set forth in the notations on the back of the client folder." The district court also found that the record did not support "the serious charge that Hurchanik engaged in intentional fabrication of evidence at that time." It specifically rejected Lovell's allegation that Hurchanik presented her with a blank "white piece of paper to sign in the courtroom just before her trial commenced." Lovell's misstatement about the most important documentary evidence in this case also poses a devastating challenge to her credibility concerning the adequacy of the information that her trial counsel conveyed to her.

Nor is the affidavit of Judge Crehan concerning his recollection of Lovell's "surprise" that she was facing a mandatory prison sentence enough to rebut the evidence to the contrary. In particular, Lovell may well have been disingenuous in feigning surprise, a credibility issue not in her favor due to her self-interest and the district court's finding that she lacked credibility regarding her signature on the allegedly blank piece of paper.

The possibility that Lovell had a diminished mental capacity is also not a persuasive reason to grant her habeas relief. During Lovell's sentencing hearing in state court, when Judge Crehan asked whether she understood that she faced a mandatory prison sentence, Hurchanik responded that Lovell's husband "says she has some mental problems." Lovell then interrupted Hurchanik with the following non sequitur: "And I've also had car accidents." But this bare reference to mental problems does not explain what type of issues Lovell might have had or why they would have affected her ability to understand Hurchanik's explanation of her sentence.

There is simply insufficient evidence about any potential mental problems for them to factor into the court's analysis. Moreover, Lovell does not contend that Hurchanik's explanation was inadequate, but rather contends that he fabricated the writing on the folder that she signed and that he never mentioned the mandatory prison time to her at all. Any diminished ability to understand is thus not relevant to Lovell's claim that Hurchanik never even presented her with the information shown on the manilla folder.

The district court concluded that because of Lovell's "demonstrated lack of understanding in this case," Hurchanik did not adequately explain to her the details of her sentence. Although at first blush this conclusion might seem purely factual, it actually involves an application of *Strickland* to the facts of this case, which we review de novo. *See Mapes v. Tate*, 388 F.3d 187, 190 (6th Cir. 2004) (holding that ineffective-assistance-of-counsel claims are reviewed de novo because they present mixed questions of law and fact, but "[a]ny findings of fact pertinent to the ineffective assistance of counsel inquiry are subject to a clearly erroneous standard of review" (internal quotation marks omitted)).

On the whole, the facts do not clearly answer the crucial question of what exactly Hurchanik communicated to Lovell prior to trial. The district court addressed this ambiguity in the factual record by concluding, based on all of the evidence, that "it appears clear from the record that petitioner's counsel failed to fully communicate to his client" or to ensure that she understood that her charges carried mandatory prison time. As the court acknowledged, this finding was based on an inference that *appeared* to be the case based on the factual record. But making this inference in the face of the wording on the manilla folder and Lovell's overall lack of credibility goes against the strong presumption that attorneys have provided effective assistance. *See Hart/Cross v. United States*, No. 95-5375, 1996 WL 367593, at *2 (6th Cir. Jul 1, 1996) (unpublished opinion) (rejecting petitioner's claim that his counsel did not adequately explain the consequences of his plea agreement, in part because a "defendant must

overcome [the] presumption that his counsel's conduct falls within [the] wide range of reasonable professional assistance" (citing *Strickland*, 466 U.S. at 689)).

The primary case relied on by the district court in support of Lovell's habeas claim is *Smith v. United States*, 348 F.3d 545 (6th Cir. 2003), which also involved an ineffective-assistance claim based upon an attorney's alleged failure to communicate the likely sentence that the defendant faced if convicted. But in *Smith* there was no evidence that information about the defendant's sentencing exposure upon conviction, which "was necessary for a proper consideration of the guilty plea offer—was ever conveyed to Smith before trial." *Id.* at 553. In contrast to this total lack of "pretrial discussions of the sentencing potential in the case," the manilla folder in the present case containing Lovell's signature provides strong evidence that Hurchanik did in fact communicate information about Lovell's sentencing exposure to her prior to trial. *Id.*

*Smith* also involved a different procedural posture than the present situation. In *Smith*, because the record did not reflect "the nature and quality of the advice [the petitioner] received before he made his final decision to reject the government's proposed plea bargain," this court remanded the case to the district court for an evidentiary hearing on the issue. *Id.* at 553-54. But in the present case, the district court has already held this type of evidentiary hearing and has thereby obtained all of the relevant evidence about Hurchanik's communication with Lovell concerning her sentence. Even though this evidence leaves some uncertainty regarding the extent of the information that Hurchanik conveyed to Lovell, that ambiguity should be resolved in Hurchanik's favor based on the strong presumption that attorneys have provided effective assistance. *See Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) ("Given the strong presumption that attorneys render adequate assistance and make all significant decisions in the exercise of reasonable professional judgment, the record contains ample indications that [the attorney] acted in accordance with applicable professional standards." (citation, internal quotation marks, and alteration omitted)).

In sum, the evidence supporting the decision of the Ohio Court of Appeals is at least as strong as the evidence to the contrary. The district court therefore erred in

concluding that the result reached by the Ohio Court of Appeals was *unreasonable*. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000) (holding that "an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law" (emphases in original)).  Because we are applying modified AEDPA deference in the present case, we have "conducted[ed] a careful review of the record and applicable law." *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005) (explaining the standard of review where "modified AEDPA deference is appropriate").  But we still may not reverse the state court's decision unless its result is "contrary to or an unreasonable application of federal law." *Id.*

Lovell, however, contends that AEDPA deference is inapplicable in her case because new evidence was presented at the federal evidentiary hearing. *See Brown v. Smith*, 551 F.3d 424, 429-30 (6th Cir. 2008) (holding that AEDPA deference did not apply because the main evidence in support of petitioner's meritorious claim was unavailable prior to the federal habeas proceeding); *see also Mendoza v. Hatch*, 620 F.3d 1261, 1268 (10th Cir. 2010) (holding that AEDPA deference does not apply "when a federal district court holds an evidentiary hearing and considers new evidence that was not before the state court at the time it reached its decision, even if the state court resolved the claim on the merits" (citation omitted)).  The problem with Lovell's contention is that the exception to AEDPA deference in this circuit requires that the new evidence *substantially supports* the habeas petitioner's claim. *See Brown*, 551 F.3d at 437  (Clay, J., concurring) (explaining that this exception to AEDPA deference applies "where critical evidence in support of a petitioner's claim was never considered by the state courts").  Here, however, the only additional evidence offered at the federal evidentiary hearing that supports Lovell's claim was her husband's testimony and Judge Crehan's affidavit.

This new evidence only marginally adds to Lovell's claim because the transcript from her sentencing hearing, as well as Judge Crehan's subsequent disposition of Lovell's motion for a new trial—both of which were considered by the Ohio Court of Appeals—clearly indicate that Judge Crehan was sympathetic to Lovell's claim that she

did not know about the mandatory prison time prior to her sentencing hearing. The district court, moreover, explicitly refrained from crediting the testimony of Lovell's husband. In contrast, the State's new evidence presented at the federal evidentiary hearing—namely, the manilla folder containing Lovell's signature with the notations regarding her mandatory sentence, as well as Hurchanik's testimony—substantially *detracts* from her claim. But even if we look solely to Lovell's new evidence, it does not *substantially* add to what the state court considered. The Ohio Court of Appeals' summary decision is therefore still entitled to modified AEDPA deference.

Although AEDPA's "unreasonable" requirement is "difficult to define," *Williams*, 529 U.S. at 410, the fact that a majority of this court might have decided differently had they heard the case on direct appeal is not sufficient to meet that standard. *See Bell v. Cone*, 535 U.S. 685, 699 (2002) (holding that "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly"). Rather, in order to grant the petitioner a writ of habeas corpus, the state court's decision must be "so inadequately supported by the record, or so arbitrary as to be unreasonable." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006). If a state court's decision on a constitutional question is "a close call," that fact "militates against the conclusion that the state court's application of the relevant Supreme Court precedent was objectively unreasonable." *Lopez v. Wilson*, 426 F.3d 339, 358 n.1 (6th Cir. 2005) (en banc) (Cole, J., concurring).

We frankly believe that the decision of the Ohio Court of Appeals was correct. But even if it was arguably wrong, we find no justification to find its result unreasonable. AEDPA therefore requires us to deny Lovell's petition for a writ of habeas corpus.

## III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and reinstate Lovell's conviction and sentence.

---

**DISSENT**

---

HELENE N. WHITE, Circuit Judge  (dissenting).  I respectfully dissent.  I conclude that the state court's determination that Lovell's trial counsel provided effective assistance was objectively unreasonable and would affirm the district court's issuance of a writ.

"[T]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case . . . [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision." *United States v. Gordon,* 156 F.3d 376, 380 (2d Cir. 1998) (quoting *Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996), quoting Anthony G. Amsterdam, *Trial Manual 5 for the Defense of Criminal Cases* (1988)); *Dedvukovic v. Martin*, 36 F. App'x 795, 797 (6th Cir. 2002) (unpublished) (citing *Boria*, 99 F.3d at 496-97).  "A failure to provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance."  *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003).  Such guidance includes explaining the relative benefits and drawbacks of the plea offer because "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Gordon*, 156 F.3d at 380; *see also Holloway v. Terhune*, 97 F. App'x 80, 82 (9th Cir. 2004) (unpublished) ("[W]here the issue is whether to advise the client to plead or not the attorney has the duty to advise the defendant of the available options and possible consequences and failure to do so constitutes ineffective assistance of counsel." (internal quotation marks omitted)); *see id.* (failure to "identify and fully communicate" to defendant that rejecting offer of 32-months' imprisonment exposed him to 27-year-to-life sentence constituted ineffective assistance of counsel).

Although the state court's factual finding that "appellant's attorney communicated the details of the plea offer to appellant" is entitled to deference, that fact is not incompatible with Lovell's claim of ineffective assistance of counsel: that her

attorney failed to adequately communicate the *consequences* of accepting or rejecting the plea agreement.

The factual record demonstrates that Lovell was unaware that if she were to be found guilty, she would face mandatory incarceration. At her sentencing hearing, Lovell expressed lack of knowledge of the mandatory incarceration that she faced. Her claim is supported by Judge Crehan's affidavit describing his observations of her during sentencing.[1] Accepting the district court's factual finding that trial counsel's notes on the manilla folder were presented to Lovell, those notes were nevertheless inadequate to establish "'sufficient awareness of the relevant circumstances and likely consequences' of [the] plea." *Carey v. Myers*, 74 F. App'x 445, 450-51(6th Cir. 2003) (quoting *Brady v. United States*, 397 U.S. 742 (1970)). Further, as the district court noted, there were indications that Lovell had cognitive disabilities, and thus an extra measure of care would be required to ensure her understanding under the circumstances.

The Warden argues that "all of the evidence, save Lovell's own, self-serving claims, indicates that Hurchanik told Lovell when he presented the plea offer that she faced a mandatory sentence if she turned it down." This is incorrect: Judge Crehan's affidavit also supports Lovell's claim. Further, the Warden's support for the contention that Lovell was informed of the potential consequences of rejecting the plea is based on inferences. From Lovell's testimony that Hurchanik told her that she would be eligible for probation if she accepted the plea, the Government infers that "there'd be no reason to tell a defendant that a benefit of a plea would be the possibility of probation unless the offenses as charged were not. Otherwise, there's no benefit to the plea bargain at all." To the contrary, even if Lovell were eligible for probation if convicted as well as under the plea, there could be a benefit in accepting the plea because it might make the court more likely, in its discretion, to sentence her to probation, or to a shorter term of probation or imprisonment. Additionally, the Warden's inference is not one that would necessarily be made by an individual unfamiliar with the criminal justice system, such

---

[1]Although this evidence was not before the state courts, the parties have not challenged the procedure employed by the district court below, and both sides cite to the expanded record.

as Lovell.  The district court did assume in its analysis that Hurchanik, as he claimed, presented Lovell with notes he made on the manilla folder.  But the Warden embellishes when she claims that the district court accepted the document as "proof, signed by Lovell herself, that her attorney had informed her of the mandatory sentence a conviction at trial would bring."  Rather, the district court held that, even assuming the document was shown to Lovell, Hurchanik "failed to provide reasonable professional assistance to the extent he did not fully explain to petitioner, or ensure her understanding of, the information he had written down about the mandatory prison sentence she was facing in cryptic, legal short-hand notes on the back of his client file folder."

The majority and the Warden take issue with the district court's reliance on *Smith v. United States*, 348 F.3d 545 (6th Cir. 2003).  In *Smith*, the habeas petitioner, who had been tried in federal court, alleged that his trial counsel was ineffective for failing to advise him to accept the prosecution's offer, which would have  allowed him to plead guilty to a one-count information with a maximum recommended sentence of twenty months.  *Id.* at 548-49.  The petitioner went to trial, was found guilty on multiple charges, and was sentenced to multiple terms of 262 months' imprisonment.  *Id.* at 549.  Although the petitioner conceded he was presented with the plea offer, this Court held:

> [I]n the context of the modern criminal justice system, which is driven largely by the Sentencing Guidelines, more is required.  A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.  In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Id.* at 553.  Because the record did not reflect "the nature and quality of the advice [the petitioner] received before he made his final decision to reject the government's proposed plea bargain," this Court remanded to the district court for an evidentiary hearing on that issue.  *Id.* at 554.

The Warden argues that *Smith* is distinguishable because "it was ultimately the complexity of the federal sentencing guidelines, along with the dearth of evidence that they had been fully explained to the defendant, that guided the Sixth Circuit's decision to remand for further development of evidence."    While *Smith* did address the Sentencing Guidelines because they were relevant to that case, it also stated principles that are applicable to any plea situation, including the present one.  *Smith* stands for the principle that an attorney must discuss "sentencing exposure" under any relevant law (in *Smith,* the Guidelines, here, state law), the elements the government must prove to gain a conviction, and the available evidence as it relates to those elements.  These principles are not tied to the Sentencing Guidelines, but are broadly applicable.

The record amply supports, and the state court's findings do not negate, the district court's finding that Lovell's counsel failed to adequately inform her of the potential consequences of rejecting the plea and that this failure rendered counsel's performance deficient.

*Strickland*'s second requirement is that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland*, 466 U.S. at 691.  We must assess whether Lovell has shown that there is a reasonable probability, but for counsel's errors, she would have accepted the plea agreement. *Magana v. Hofbauer*, 263 F.3d 542, 547 (6th Cir. 2001).  This Court has noted that the burden of establishing prejudice in the guilty-plea context is less than in a trial context. *Griffin v. United States,* 330 F.3d 733, 737 (6th Cir. 2003) ("It is therefore easier to show prejudice in the guilty plea context because the claimant need only show a reasonable probability that he would have pleaded differently.").

I conclude that Lovell demonstrated prejudice from the deficient conduct of her trial counsel.  The disparity between the probation she likely would have received and the mandatory minimum of one year of incarceration is sufficiently substantial to establish prejudice. *See Dedvukovic*, 36 F. App'x at 798 ("[I]t has been held . . . that a substantial disparity between the penalty offered by the prosecution and the punishment

called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer."). Indeed, "[t]his Court has given special weight to significant disparities between penalties offered in a plea and penalties of a potential sentence in determining whether a defendant suffered prejudice by not accepting a plea offer." *United States v. Morris*, 470 F.3d 596, 602 (6th Cir. 2006). The significance of the discrepancy is bolstered in this case by Hurchanik's testimony that Judge Crehan was known as a lenient sentencer, Judge Crehan's affidavit stating he likely would have sentenced Lovell to probation, and Hurchanik's admission that cases involving a drug sale to an undercover officer are particularly difficult to defend.

Based on the foregoing, I conclude that the state court's determination that Lovell received the effective assistance of counsel was objectively unreasonable, and would affirm the district court's issuance of a writ.