**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0864n.06

**No. 11-5516**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

CALVIN O. TANKESLY, JR.,

     Petitioner,

v.

TOMMY MILLS, Warden,

     Respondent.

_____/

FILED

**Aug 08, 2012**

LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

BEFORE:     GUY and CLAY, Circuit Judges; HOOD, District Judge.[*]

**CLAY, Circuit Judge.** Petitioner Calvin Tankesly, a Tennessee state prisoner, appeals an order denying his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his convictions for rape of a child and attempted rape of a child. Petitioner contends that trial counsel's conduct in moving to suppress four hundred items of women's undergarments found in his home and car did not protect his Fourth Amendment rights. Because Petitioner has not proven his entitlement to relief under *Strickland v. Washington*, 466 U.S. 668 (1984), we **AFFIRM** the district court's judgment.

---

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

## FACTUAL BACKGROUND

Petitioner was accused of sexually assaulting a six-year-old girl in the laundry room of his apartment complex on May 6, 1995. During their investigation, law enforcement officers executed a warrant to search Petitioner's home and car. The search warrant directed officers to seize, among other things, cameras, photographs depicting juveniles engaged in sexual activity, magazines depicting sexual activity, sex toys, and clothing described by the victim and witnesses as worn by the assailant. During the search, officers found and seized over four hundred items of women's undergarments from Petitioner's home and car. These undergarments were not listed in the warrant as items subject to seizure.

Petitioner was indicted for rape and attempted rape in October 1995. Prior to trial, the parties litigated the admissibility of the four hundred undergarments. At a motions hearing on December 4, 1997, the prosecution sought to introduce the undergarments as evidence of "other acts" of sexual misconduct by Petitioner demonstrating his identity as the assailant. *See* Tenn. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts [may] be admissible for [non-character] purposes."). Petitioner had recently pleaded no contest to a factually similar crime in a nearby county, where he allegedly offered the victim a pair of women's undergarments. Thus, the prosecution argued that the undergarments helped prove Petitioner's identity as the assailant in the instant case. Defense counsel moved *in limine* to prohibit the prosecution from offering the undergarments for admission into evidence. Counsel vigorously contended that the undergarments did not prove Petitioner's identity and would prejudice him before the jury. The trial court admitted the undergarments, reasoning that they were probative of the assailant's identity.

Defense counsel also moved to suppress the undergarments on the basis of a Fourth Amendment violation. Petitioner's ineffective assistance claim arises from counsel's conduct in pursuing this motion. During the December 4, 1997 motions hearing, defense counsel stated his intent to move to suppress the undergarments as obtained beyond the scope of the search warrant. Counsel first explained that he had not moved to suppress the evidence earlier because Petitioner had entered into a plea bargain on a similar charge in a nearby jurisdiction in which he waived his right to contest the search warrant's execution. Counsel then stated the basis for the forthcoming motion to suppress:

> Your honor, I will be candid with you, I have reviewed a lot of the . . . police files. At that time it was my understanding, my recollection, there is nothing in the search warrant that said that [officers] could seize women's underwear. So, then, we've come in on the day—less than thirty days, on the eve of trial, they're saying, "Hey, we're going to introduce this stuff." Well my client didn't—waived all that right to contest that search when he entered a plea of guilty. So we're back now that I probably need to file a motion to suppress, and suppress all that.

The trial judge stated that he would be available to hear oral argument on the motion to suppress in court the next day.

Later in the day on December 4, counsel filed a one-page motion to suppress. The motion briefly stated that a search was conducted on Petitioner's home on May 30, 1995, that "the search warrant was . . . in violation of the Fourth Amendment," and that the court should suppress "the items or information found as a result of [the] search." On December 5, counsel filed an amended motion, further explaining that "items seized [during the search] were not specifically includ[ed] in the search warrant, to-wit: women's undergarments."

It appears that this motion was argued orally before the trial court, but the record leaves some doubt on this point. A minute entry from the first morning of trial states briefly that Petitioner's motion to suppress was denied. In a trial colloquy with the prosecution prior to the undergarments' admission, the trial judge explained that he had "overruled the motion to suppress." However, absent from the record is the transcript of any oral argument setting out the factual and legal grounds for the ruling on the suppression motion.

Petitioner's trial commenced on December 8, 1997. According to the evidence presented at trial, the victim was at her aunt's apartment on the date of the attack and visited the apartment complex's laundry room to buy her aunt a soft drink. As the victim walked into the laundry room, Petitioner was walking out. Petitioner asked the victim, "Do you want any panties?" Petitioner then forced the victim to the ground, put his hand over her mouth, pulled down the victim's shorts and underwear, digitally penetrated the victim's vagina, and attempted to force the victim to perform oral sex on him. Seeing people approach the laundry room, Petitioner placed the victim back on her feet and told her to pull up her pants and underwear. Petitioner then left the laundry room. At trial, the victim proved unable to point out Petitioner in court as her assailant, but she did pick his picture out of a photo array.

Kimberly and Jimmy Gilkeson, a married couple that resided in the same apartment complex, both testified that they drove up to the laundry room and parked outside. Kimberly parked their car beside Petitioner's car as Petitioner walked out of the laundry room. As Petitioner exited the laundry room and entered his car, Kimberly made eye contact with him and observed him for roughly fifteen seconds. Both Kimberly and Jimmy noticed a male, blond-haired child buckled in the seat of

Petitioner's car. Kimberly and Jimmy then entered the laundry room to find the victim sobbing hysterically and accusing Petitioner of trying to kill her. The victim's hair was tousled, change was scattered on the floor, and the girl was standing in a puddle of urine. Kimberly wiped up the urine with a pair of women's undergarments she found on the floor.

Both Kimberly and Jimmy identified Petitioner as the man leaving the laundry room in pre-trial photograph arrays and at trial. The Gilkesons' description of Petitioner's car matched the car Petitioner owned. The boy Kimberly saw in Petitioner's car was the same gender and roughly the same age as Petitioner's son at the time. Petitioner's wife testified that their son was with Petitioner at the time of the attack.

Based on the foregoing evidence, the jury convicted Petitioner of rape and attempted rape, and the Tennessee Court of Criminal Appeals affirmed the conviction. *See State v. Tankesly*, No. M1998-00683-CCA-R3-CD, 2000 WL 1521475, *11 (Tenn. Crim. App. Oct. 4, 2000). The court concluded that the trial court's admission of the undergarments was erroneous, because the undergarments were irrelevant. *See id.* at *7. However, the court also concluded that the error was harmless in light of the evidence of guilt offered against Petitioner, which it considered overwhelming. *See id.*

In his petition for state post-conviction relief, Petitioner raised several claims of ineffective assistance of trial counsel. One of these claims alleged that trial counsel did not move to suppress the undergarments. During the hearing on Petitioner's post-conviction motion, defense counsel testified regarding his trial preparation. Counsel explained that he initially planned to pursue an alibi defense in which Petitioner's friend would testify that Petitioner was fixing her computer at the time

of the rape. But counsel declined to pursue that defense when it became clear that pursuing it would open the door to testimony regarding a factually similar crime for which Petitioner was convicted. Instead, after the rape victim proved unable to make a verbal identification of Petitioner during her testimony, defense counsel chose to focus on that fact. Counsel also explained that "the case took a completely different turn" when the undergarments were admitted, because the introduction of the undergarments "had a chilling [e]ffect on the jury." Because he believed that the undergarments were such a significant piece of evidence against Petitioner, counsel made challenging their introduction under Rule 404(b) one of the "critical issues" in Petitioner's direct appeal. With respect to the motion to suppress, defense counsel stated that he argued the motion "either the morning of the trial or Friday before." However, defense counsel's testimony also vacillates about whether the motion was in fact argued in court.

The state trial court denied Petitioner's request for post-conviction relief. The court reasoned that counsel moved to suppress the undergarments with the paper motion he filed. The court also noted that the Tennessee Court of Criminal Appeals concluded that the introduction of the undergarments was harmless error, thus implying that Petitioner could not show that counsel's more thorough pursuit of the issue would have aided his defense. As the state post-conviction court explained:

> from the transcripts of the proceedings, it appears as though trial counsel did in fact argue to have the undergarments suppressed at a hearing on December 4, 1997. [Defense counsel] actually filed a motion to suppress this particular evidence based on the grounds that the search warrant was defective, but as aforementioned, it was denied. This issue is without merit.

The Tennessee Court of Criminal Appeals affirmed for the same reasons. *See Tankesly v. State*, No. M2005-02008-CCA-R3-PC, 2007 WL 1890208, at \*10 (Tenn. Crim. App. June 28, 2007).

Petitioner sought federal habeas corpus relief while his petition for state post-conviction relief was still pending. The petition argued that counsel's conduct in challenging the officers' seizure of the women's undergarments denied him the right to effective assistance of counsel. According to Petitioner, the undergarments were outside the scope of the agents' search warrant and therefore not subject to seizure. Since the warrant did not permit the seizure of the undergarments, Petitioner argued that counsel should have challenged the seizure. While admitting that counsel filed a paper motion to suppress the undergarments, Petitioner contended that counsel's one-page suppression motion insufficiently vindicated his Fourth Amendment rights. According to Petitioner, defense counsel should have developed the motion more fully with some legal analysis and argued the motion orally in front of the trial court.

The district court appointed Petitioner counsel and held the case in abeyance until Petitioner exhausted his claims in state court, after which the district court reopened the case. Respondent sought dismissal, arguing that Petitioner failed to exhaust his claim in state court and, alternatively, that Petitioner's claim lacked merit. The district court denied Petitioner's ineffective assistance claim on the merits, granted Respondent summary judgment, dismissed the petition, and certified Petitioner's ineffective assistance claim for appeal. Petitioner timely appealed.

## DISCUSSION

### I.  Standard of Review

On appeal of a denial of a petition for a writ of habeas corpus, we review the district court's conclusions of law *de novo* and its factual findings for clear error. *Lovell v. Duffey*, 629 F.3d 587, 593-94 (6th Cir. 2011). We accept the state court's determination of a factual issue unless the petitioner upsets the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002).

### II.  Exhaustion of State Remedies

Respondent contends that Petitioner failed to exhaust his ineffective assistance claim in state court. A petitioner must exhaust all remedies available to him in state court before a federal court can grant habeas relief. 28 U.S.C. § 2254(b)(1)(A). To exhaust a claim, the petitioner must "fairly present[]" it in state court accompanied by some measure of factual and legal development. *Hooks v. Sheets*, 603 F.3d 316, 320 (6th Cir. 2010) (internal quotation and citation omitted); *see also Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (internal quotation and citation omitted) (explaining that a petitioner "need not cite 'chapter and verse' constitutional law" in raising a claim in state court but must be more specific than generally alleging constitutional violations). The claim's presentation must proceed through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If the petitioner fails to exhaust a claim in state court, and the claim would be time-barred if raised in state court at the time of his federal habeas petition, that federal claim is procedurally defaulted. *Awkal v. Mitchell*, 613 F.3d 629, 646 (6th Cir. 2010) (en banc).

Respondent is correct that Petitioner's claim has evolved in the course of state proceedings. In his petition for state post-conviction relief, Petitioner claimed that trial counsel did not move to suppress the undergarments. On appeal of the denial of his petition, Petitioner developed this argument into the more specific claim that trial counsel failed to argue that the warrant did not permit the seizure of the undergarments. While the latter claim is an outgrowth of the former claim, the claims are not identical.

However, in opposing Petitioner's appeal in front of the Tennessee Court of Criminal Appeals, the state did not argue that Petitioner failed to raise his claim before the state post-conviction court. Therefore, the state waived the defense. An exhaustion defense is waived if it is not asserted. *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004). And if the failure to assert the procedural bar leads the state court to address the claim on the merits, we may do the same. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985); *see Baze*, 371 F.3d at 320. The state's appellate brief opposes Petitioner's claim on the merits, repeating the conclusion of the state post-conviction court that counsel moved to suppress the undergarments. Thus, Petitioner asserted a claim before the Tennessee Court of Criminal Appeals identical to the one he asserts here, and the state did not invoke the procedural bar in defense of the claim. The Tennessee Court of Criminal Appeals then addressed the claim on the merits. *Tankesly*, 2007 WL 1890208, at *10. Therefore, Respondent waived his exhaustion defense.

## III. Ineffective Assistance of Counsel Claim

### A. Antiterrorism and Effective Death Penalty Act ("AEDPA")

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition. Under AEDPA, an application for a writ of habeas corpus will not be granted with respect to claims adjudicated on the merits in state court proceedings unless the adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court on a set of materially indistinguishable facts." *Jackson v. Bradshaw*, 681 F.3d 753, 759 (6th Cir. 2012) (internal quotations and citations omitted). A state court decision is based on an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (internal quotations and citations omitted). "Clearly established federal law" means "the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006) (internal quotation and citation omitted). We review the state court's determination of mixed questions of law and fact under the "unreasonable application" element of AEDPA. *Jackson*, 681 F.3d at 760.

We examine the last state-court decision on the merits, which in this case is the Tennessee Court of Criminal Appeals' denial of Petitioner's request for post-conviction relief. *Garcia v. Andrews*, 488 F.3d 370, 374 (6th Cir. 2007). AEDPA allows us to award a petitioner relief only if the state court's application of federal law is "objectively unreasonable" instead of simply incorrect. *Jackson*, 681 F.3d at 759 (internal quotation and citation omitted). To conclude that a state court's application of federal law was unreasonable, we must decide that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedents. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Under this inquiry, we must decide "what arguments or theories supported or . . . could have supported, the state court's decision." *Id.* Then, we must consider whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* We award relief only if there is no basis for disagreement among fairminded jurists. *Id.*

## B.     Legal Framework

A criminal defendant has the right to professional representation under the Sixth Amendment. *See Strickland*, 466 U.S. at 687. If "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," then the defendant has not been accorded his right to professional representation. *Id.* at 686. Representation is deficient under *Strickland* when counsel acts so poorly that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In order to prevail on an ineffective assistance of counsel claim, a petitioner "must demonstrate that counsel's representation fell below an objective standard of reasonableness and that the defendant

11

was prejudiced by the ineffective assistance of counsel." *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000).

To satisfy the prejudice element of *Strickland*, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* We take into account "the totality of the evidence before the . . . jury," on the assumption that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 695.

Petitioner faults counsel for his conduct in seeking the suppression of certain evidence seized during a police search. A defense attorney's failure to move to suppress evidence may form the basis of a Sixth Amendment ineffective assistance claim. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). In order to make out such a claim, the petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Id.* at 375; *see Joshua v. DeWitt*, 341 F.3d 430, 437 (6th Cir. 2003).

C.    **Analysis**

We face two unique challenges in deciding this appeal, owing first to the posture of Petitioner's ineffective assistance claim and second to a lacuna in the state court records before us. On the first issue, Petitioner does not, and cannot, argue that trial counsel entirely failed to protect his Fourth Amendment rights. In other cases in which we have found an attorney's performance

deficient for failing to raise a particular Fourth Amendment issue, trial counsel entirely failed to lodge a Fourth Amendment challenge to the admission of evidence, and the merit of the defendant's underlying Fourth Amendment argument was obvious. *See Joshua*, 341 F.3d at 347; *Northrop v. Trippett*, 265 F.3d 372, 382 (6th Cir. 2001). For example, in *Joshua v. DeWitt*, we concluded that counsel performed deficiently when he moved to suppress evidence obtained from a *Terry* stop but failed to cite a particular Supreme Court case with "clear precedential authority" and "unique factual similarities" to the defendant's case. *Joshua*, 341 F.3d at 441; *see United States v. Hensley*, 469 U.S. 221 (1985). In *Northrop v. Trippett*, the defendant was detained by officers based on an unverified anonymous tip, and officers had no other basis for stopping the defendant. *Northrop*, 265 F.3d at 382. We found trial counsel's performance deficient, because counsel "should have recognized" that the stop was illegal and "did not file any motion challenging the seizure" of the defendant. *Id.* at 383.

No such oversight occurred in this case. By filing his motion to suppress, counsel objected to a potential Fourth Amendment violation and raised the issue and factual ground for the state court's decision. Thus, Petitioner's claim amounts to the assertion that counsel filed the suppression motion but abandoned it. Petitioner faults counsel for filing a motion with no case citations and little factual development, but the issue counsel raised—whether the undergarments were outside the scope of the search warrant—was straightforward and uncomplicated. Whether or not counsel could have better served his client by arguing the motion to suppress more vigorously and providing more case support, counsel nevertheless raised the issue and factual ground for the district court's decision.

Counsel's act of raising the issue distinguishes this case from *Joshua* and *Northrop* and seriously weakens Petitioner's claim.

Moreover, counsel's one-page suppression motion was likely aimed reserving the issue in order to argue it in court. That likelihood leads us to the second challenge presented by this case: absent from the record before us is a transcript of a hearing on trial counsel's motion to suppress. Respondent complied with his duty of filing the records of Petitioner's criminal proceedings with the court below, but those records do not include a transcript of a suppression hearing. Petitioner argues that the absence of such a transcript leads to the conclusion that no hearing occurred. On the basis of this conclusion, Petitioner argues that counsel made no effort to argue the motion and thereby abandoned it. For his part, Respondent contends that the motion was argued but that the transcript was simply lost. The Tennessee Court of Criminal Appeals adopted the state post-conviction court's finding that the motion was argued at the hearing on December 4, 1997. This finding is clearly erroneous, however, because our review of that hearing's transcript clearly demonstrates that counsel raised the prospect of filing a suppression motion but did not put forward anything more than a passing argument about the scope of the warrant.

Nevertheless, on balance, the record still supports a finding that a hearing occurred. At the hearing on Petitioner's motion for state post-conviction relief, defense counsel testified that he argued his motion to suppress on the Friday before trial (December 5, 1997) or on the morning of trial (December 8, 1997). A minute entry from the first day of trial notes, albeit briefly, that the motion to suppress was overruled. The same minute entry states that the jury was impaneled and heard the state's opening statement, which supports defense counsel's testimony that the motion was

14

argued on the first morning of trial. And when the government sought to admit the undergarments at trial and defense counsel objected, the judge explained that he had denied Petitioner's motion to suppress.

In the face of this evidence, Petitioner contends that the record's references to a suppression hearing are actually misstated references to the December 4, 1997 motions hearing. Petitioner's argument is plausible, but, in light of the evidence available from the record, his interpretation—supported only by the absence of a hearing transcript—is not sufficiently clear or convincing to warrant the conclusion that no suppression hearing occurred. 28 U.S.C. § 2254(e)(1); *see Rice v. White*, 660 F.3d 242, 254–57 (6th Cir. 2011) (finding that the record evidence contradicted a state court's finding regarding a prosecutor's motive in using peremptory strikes in a petitioner's *Batson* challenge). And on a record that leads us to find that counsel orally argued his suppression motion before the trial court, we are compelled to conclude that Petitioner's ineffective assistance claim is factually unfounded.

To the extent that any doubt remains about whether trial counsel sought an oral hearing on the motion, we find two other deficiencies in Petitioner's claim. First, counsel made a valid strategic choice in his method of challenging the introduction of the undergarments. In the course of deciding whether counsel performed deficiently, we take care not to "second-guess" defensible strategic decisions that ultimately fail. *Strickland*, 466 U.S. at 688. A defensible strategic choice "made after thorough investigation of law and facts relevant to plausible options" is rarely a basis for habeas relief. *Id.* at 690. Without derogating the importance of Petitioner's Fourth Amendment rights, the practical harm resulting from the collection of the undergarments was not their seizure outside the

15

scope of the warrant but their admission into evidence during his trial. Counsel made the decision to challenge the state's attempt to introduce the undergarments under Tennessee Rule of Evidence 404(b). He did so by vigorously arguing that the undergarments were unduly prejudicial. *See* Tenn. R. Evid. 403. The fact that the Tennessee Court of Criminal Appeals agreed with defense counsel's argument demonstrates its strength. *See Tankesly*, 2000 WL 1521475, at *7. We have explained that a defense attorney may have "several possible arguments available" and may be forced to pursue the one "most likely to succeed or [that] offers the greatest possible return" for the defendant. *See Cowans v. Bagley*, 639 F.3d 241, 250 (6th Cir. 2011). The record demonstrates that counsel surveyed the options available for excluding the undergarments and decided that the Rule 403 challenge was the strongest line of argument. A valid decision of this sort is "virtually unchallengeable." *Strickland*, 466 U.S. at 690. Had the Fourth Amendment argument been the only avenue available to counsel, and had counsel failed to explore that avenue for suppressing the evidence, our analysis would be different. But even if Petitioner's Fourth Amendment argument was strong, counsel's decision to pursue another strong argument was a decision "within the wide range of reasonable professional" competence. *Id.* at 689.

Second, while we are not bound by the Tennessee Court of Criminal Appeals' harmlessness conclusion, we agree with that court that Petitioner was not prejudiced by the undergarments because the other evidence against him was strong. Petitioner contends that the admission of the undergarments prejudiced his defense, because, in the words of trial counsel, the undergarments "had a chilling [e]ffect on the jury" and undercut the strategic benefit he gained when the victim did not verbally identify Petitioner as her assailant in court. We conclude differently.

16

Petitioner's trial was not reasonably likely to turn out better for him if counsel had argued his motion to suppress at a separate hearing and if the undergarments had been suppressed. *See Strickland*, 466 U.S. at 694. The testimony from Kimberly and Jimmy Gilkeson was strong evidence against Petitioner. The Gilkesons parked outside the apartment complex laundry room and saw the assailant leave while they were parking. Kimberly saw a blond-haired male child in the passenger seat of the assailant's car. At trial, Petitioner's wife testified that she had left their children with Petitioner on the day of the attack, and she described her son's appearance consistently with Kimberly's description of the car. The Gilkesons parked next to the assailant's car and had to wait for him to enter his car before Kimberly could leave hers. The description of the car parked outside the laundry room and driven by the assailant matched the description of the car Petitioner owned. While waiting roughly fifteen seconds for the assailant to enter his car, Kimberly saw the assailant and made eye contact with him. The Gilkesons then entered the laundry room to find the victim wailing and claiming that the man who just left the laundry room had tried to kill her. Both Kimberly and Jimmy Gilkeson later identified Petitioner as the assailant when they picked his picture from a photo array outside each others' presence and in court during each of their testimonies. The jury's verdict suggests that the jury found the Gilkesons' testimony credible, making their testimony strong independent evidence of Petitioner's identity. While circumstantial, this evidence was strong and it was reasonably likely to lead a jury to conclude Petitioner was the assailant even without the aid of the undergarments.

Petitioner overstates certain weaknesses in the prosecution's case. Petitioner emphasizes the fact that the victim, who was eight years old at the time of trial, was unable to make an in-person

identification of Petitioner during her testimony. But Petitioner shaved his beard and cut off his ponytail between the time of the rape and the time of trial, likely making it more difficult for the child to recognize him. Moreover, the victim identified a picture of Petitioner taken roughly at the time of the rape from a photo array put before her during her testimony.

Petitioner also argues that the state relied heavily on the undergarments as evidence against him during the prosecutors' closing statements, but this argument incorrectly characterizes the weight of the undergarments in the state's case. The prosecutors referred to the undergarments roughly four times in their closing statements, including one extended treatment of that evidence in the state's rebuttal. However, the lead prosecutor barely mentioned the undergarments in his initial closing statement. And taken as a whole, the undergarments were given no greater weight in the closing argument than other factual issues raised in the trial, including the Gilkesons' identifications, the victim's photo identification, the changes Petitioner made to his appearance prior to trial, the victim's inability to make an in-court identification, the length of time Kimberly Gilkeson saw the assailant as he walked out of the laundry room, and Petitioner's claim that he walked with a limp at the time of the rape.

Any adverse effect to Petitioner's case caused by the prosecutor's comments was unlikely to change the outcome of the trial. To be sure, to the extent that the introduction of the undergarments was prejudicial, these references were naturally prejudicial as well. But the fact that the comments about the undergarments helped the state's case does not mean that Petitioner was likely to be acquitted in their absence. We have recounted the evidence offered against Petitioner excluding the undergarments, which was quite incriminating. In light of the Gilkesons' testimony

18

and the other evidence against Petitioner, any shortcomings in trial counsel's performance likely did not affect the outcome of Petitioner's trial.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.